1  DALEY & HEFT, LLP, ATTORNEYS AT LAW
   ROBERT W. BROCKMAN, JR., ESQ. (BAR #123546)
2  CRAIG A. BEALER, ESQ. (SBN 243059)
   462 STEVENS AVENUE, SUITE 201
3  SOLANA BEACH, CA  92075
   TELEPHONE:  (858) 755-5666
4  FACSIMILE:  (858) 755-7870
   Cbealer@daley-heft.com
5
   Attorneys for Plaintiff
6  TEG STAFFING, INC.

7

8              UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10

11  TEG STAFFING, INC., a California      )    Case No.08-cv-3073 JSW
    Corporation, dba PLATINUM LEGAL       )
12                                        )    **PLAINTIFF TEG STAFFING INC'S**
                                          )    **OPPOSITION TO DEFENDANT**
13              Plaintiffs,               )    **SAUNDRA COSTICK AND**
                                          )    **DEFENDANT JOHN COSTICK'S**
14        v.                              )    **MOTION TO DISMISS**
                                          )
15  D. ALEXANDER PLATT, an individual,    )
    SANDY COSTICK, an individual, and JOHN )   **DATE:**    October 17, 2008
16  COSTICK, an individual; and DOES 1-25 )    **TIME:**    9:00 a.m.
                                          )    **DEPT :**   Courtroom 2, 17th Floor
17              Defendants.               )    **JUDGE:**   Hon. Jeffery S. White
                                          )
18  _____

19                         I.

20                    **INTRODUCTION**

21        The Federal Rules of Civil Procedure rule 12(b)(2) and 12(b)(3) motion attacking personal

22  jurisdiction and venue by Defendants, JOHN COSTICK and SAUNDRA COSTICK (referred to

23  collectively as the COSTICKS), fails to consider a host of allegations against each COSTICK

24  amounting to a single nationwide conspiracy under the Racketeer Influenced and Corrupt

25  Organizations Act (RICO).[1]   Under United States Code, Title 18, section 1965, personal

26  jurisdiction and venue of this court is proper by virtue of this single nationwide conspiracy.

27  _____
    [1] In fact, the Costicks motion fatally relies only on one allegation against the Costicks within the "Jurisdiction and
28  Venue" section of plaintiff's complaint while wholly ignoring the more than 70 references to "Defendants" (plural
    and therefore encompassing all defendants) other conduct or the conduct of "each defendant." All of these other
    allegations are uncontroverted and therefore assumed true.

                                  1
    **PLAINTIFF TEG STAFFING INC'S OPPOSITION TO DEFENDANT SAUNDRA COSTICK AND**
    **DEFENDANT JOHN COSTICK'S MOTION TO DISMISS**

1        Additionally, because the Costicks expressly aimed a fraud at a California corporation,

2    personal jurisdiction is proper under a specific jurisdiction analysis.

3    **II.**

4    **BACKGROUND**

5        Plaintiff, TEG STAFFING, INC., filed its complaint in this court on June 25, 2008

6    alleging, among other things, all defendants violated RICO by engaging in a single nationwide

7    racketeering activity (the Conspiracy) in which they misappropriated plaintiff's funds for their

8    personal use. Although these exact words were not used, the following uncontroverted allegations

9    from plaintiff's complaint easily illustrate the Conspiracy was singular and spanned multiple

10    districts. These uncontroverted allegations also establish the Costicks are subject to specific

11    jurisdiction of this court (Plaintiff's complaint is attached hereto and incorporated by reference

12    herein.) In potential part, plaintiff's complaint states:[2]

13           1.    PLAINTIFF, TEG Staffing, Inc. is and at all times herein mentioned

14    was a corporation under the laws of the state of California with its principal place of business in the City of San Diego, County of San Diego. PLAINTIFF is and at all times herein mentioned was authorized to do business in the State of California.

15           2.    PLAINTIFF is informed and believes DEFENDANT, D.

16    ALEXANDER PLATT, has never been a licensed attorney in the State of California,

17    although she may be an attorney in other jurisdictions, and is and at all times mentioned herein was an individual residing in the County of San Francisco, State of California.

18           3.    PLAINTIFF is informed and believes DEFENDANT, SANDY

19    COSTICK, is and at all times mentioned herein was an individual residing in the State of New Mexico.

20

21           4.    PLAINTIFF is informed and believes DEFENDANT, JOHN COSTICK, is and at all times mentioned herein was an individual residing in the State of New Mexico.

22

23           11.    Venue is proper in United States District Court, Northern District of

24    California as to DEFENDANT PLATT, because PLATT resides or can be found within the boundaries of the County of San Francisco. (18 U.S.C. § 1965(a).)

25           12.    Venue is proper in United States District Court, Northern District of

26    California as to DEFENDANTS SANDY COSTICK and JOHN COSTICK, as a

27      [2] Again, it is paramount under applicable standards for review of this motion, the court must assume as true any uncontroverted allegations. (Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800.) There is nothing in the

28    Costicks' moving papers or affidavits that controvert any of these facts. As such, the Court must assume all relative allegations in plaintiff's complaint are true.

2

**PLAINTIFF TEG STAFFING INC'S OPPOSITION TO DEFENDANT SAUNDRA COSTICK AND DEFENDANT JOHN COSTICK'S MOTION TO DISMISS**

substantial part of the events or omissions giving rise to the claim occurred in this District. (28 USC §1391(b)(2).)

13.    Assignment is proper in the San Francisco Division based on the fact PLAINTIFF is informed and believes DEFENDANT PLATT, is and at all times mentioned herein was an individual residing in the County of San Francisco, State of California and all or a substantial part of the events or omissions giving rise to the claim occurred in the County of San Francisco, State of California.

23.    For DEFENDANTS to effectuate the scheme or artifice to misappropriate PLAINTIFF's rightfully owed funds, PLAINTIFF is informed and believes DEFENDANTS engaged in utilizing the telephone or other means of wire or radio to communicate interstate to set-up and open accounts in various states, which may include California, Arizona, and New Mexico, among others.

24.    For DEFENDANTS to effectuate the scheme or artifice to misappropriate PLAINTIFF's rightfully owed funds, PLAINTIFF is informed and believes DEFENDANTS engaged in utilizing the telephone or other means of wire or radio to communicate interstate, regarding the utilization of a mailing address in New Mexico for the receipt of funds misappropriated from PLAINTIFF.

25.    PLAINTIFF is informed and believes DEFENDANTS, to effectuate the scheme or artifice to misappropriate PLAINTIFF's rightfully owed funds, engaged the use of the Postal Service or other private or commercial interstate carrier to send or caused to send the funds interstate from California to a personal address in New Mexico and possibly other states.

27.    PLAINTIFF is informed and believes each DEFENDANT is a "person" within the meaning of United States Code, Title 18, section 1961(3) and an "enterprise" within the meaning of United States Code, Title 18, section 1961(4).

28.    PLAINTIFF is informed and believes DEFENDANTS engaged in a pattern of "racketeering activity," within the meaning of United States Code, Title 18, sections 1961(1), 1961(5), and 1962(b), to acquire or maintain, directly or indirectly, an interest or control of an enterprise, which is engaged in or the activities of which affect interstate commerce.

29.    PLAINTIFF is informed and believes DEFENDANTS were employed by and/or associated with an "enterprise," within the meaning of United States Code, Title 18, sections 1961(4) and 1962 (c), engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity, within the meaning of United States Code, Title 18, section 1961(5).

30.    PLAINTIFF is informed and believes DEFENDANTS committed, under United States Code, Title 18, sections 1961(1)(B), 1961(5), 1962(b), and/or 1962(c), the following predicate acts: multiple instances of mail fraud in violation of United States Code, Title 18, section 1341 and multiple instances of wire fraud in violation of United States Code, Title 18, section 1343.

31.    PLAINTIFF is informed and believes DEFENDANTS' pattern of racketeering activity and operation of the enterprise in the commission of the predicate acts actually and proximately caused PLAINTIFF's injuries in an amount to be proven at trial.

**PLAINTIFF TEG STAFFING INC'S OPPOSITION TO DEFENDANT SAUNDRA COSTICK AND DEFENDANT JOHN COSTICK'S MOTION TO DISMISS**

35.    As illustrated in paragraphs 22 to 25, DEFENDANTS engaged in numerous deceptive, fraudulent, wrongful, and illegal activities, including, but not limited to, creating a scheme or artifice to defraud PLAINTIFF and misappropriate/convert PLAINTIFF's funds and/or money (property) for personal use.

36.    As a result of these unlawful and fraudulent activities, DEFENDANTS intentionally and permanently took possession of, or permanently gave away to third parties, a substantial and specific amount of PLAINTIFF's property.

37.    At the time of these unlawful conversions, PLAINTIFF owned, possessed, and maintained a right to possess the subject property.

38.    PLAINTIFF did not consent to DEFENDANTS' acquisition and misappropriation/conversion of PLAINTIFF's property.

39.    PLAINTIFF has been harmed by DEFENDANTS' unlawful conduct relating to PLAINTIFF's property.

40.    DEFENDANTS' unlawful conduct relating to PLAINTIFF's property was a substantial factor, if not the sole factor, in causing PLAINTIFF's harm.

41.    As a direct and proximate result of the misappropriation/conversion of PLAINTIFF's property, PLAINTIFF suffered and continues to suffer actual damages in an amount, according to proof at the time of trial.

### III.

### STANDARD ON THIS MOTION

When defendants move to dismiss a complaint for lack of jurisdiction, plaintiff bears the burden of demonstrating jurisdiction is appropriate.    (Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir. 2004).)  If there is no evidentiary hearing, as will be the case here, plaintiff need only make a prima facie showing of personal jurisdiction. ( Id.)   While plaintiff cannot rely solely on the "bare allegations," any uncontroverted allegations in the complaint must be taken as true. (Id.)  Finally, any conflicting statements within affidavits must be resolved in favor of plaintiff. (Id.)

### IV.

### JURISDICTIONAL ANALYSIS

A federal court obtains personal jurisdiction over a defendant if it is able to serve process. (Butcher's Union Local No. 498 v. SDC Investment, Inc., 788 F.2d 535, 538 (9th Cir. 1986).) To effectuate valid service of process there must be a statute authorizing service of process and the

1    exercise of personal jurisdiction must not contravene any constitutionally protected rights of the

2    defendant.  (Id.) Here, United States Code, Title 18, section 1965(b) authorizes service.  It states:

3        In any action under section 1964 of this chapter in any district court of the
    United States in which it is shown that the ends of justice require that other
4        parties residing in any other district be brought before the court, the court
    may cause such parties to be summoned, and process for that purpose may
5        be served in any judicial district of the United States by the marshal thereof.

6    (18 U.S.C. § 1965(b).)

7        **A.  Personal Jurisdiction Over The Costicks Is Proper Under 18 U.S.C. § 1965(b).**

8        "In section 1965(b), Congress provided for service of process upon RICO defendants

9    residing outside the federal court's district when it is shown that 'the ends of justice' require it."

10    (Butcher's, supra, 788 F.2d at 538.)  In Butcher's, the Ninth Circuit Court of Appeals concluded,

11    after a survey of applicable case law and legislative materials, that "Congress intended the 'ends

12    of justice' provision to enable plaintiffs to bring all members of a nationwide RICO conspiracy

13    before a court in a single trial." (Butcher's, supra, 788 F.2d at 539.)  The right to nationwide

14    service, however, is not unlimited.  (Id.)  To impose nationwide service under section 1965(b),

15    "the court must have personal jurisdiction over at least one of the participants in the alleged

16    multidistrict conspiracy and the plaintiff must show that there is no other district in which a court

17    will have personal jurisdiction over all the of the alleged conspirators." ( Id.) Further case

18    development of this area of law shows an initial element of the existence of a single nationwide

19    conspiracy. (See, e.g.,  Rocawear Licensing, LLC v. Pacesetter Apparel Group,  2007 WL

20    5289737, which acknowledges this threshold finding.)

21        **i.  Plaintiff Properly Alleges A Single Nationwide Conspiracy.**

22        First, plaintiff's uncontroverted allegations Platt is a resident of the State of California and

23    the Costicks are residents of New Mexico establish the existence of a multidistrict matter.

24    Second, the uncontroverted allegations Platt and the Costicks engaged in a scheme and artifice

25    to defraud plaintiff establishes the existence of a single nationwide conspiracy among the three.

26    ///

27    ///

28    ///

PLAINTIFF TEG STAFFING INC'S OPPOSITION TO DEFENDANT SAUNDRA COSTICK AND
DEFENDANT JOHN COSTICK'S MOTION TO DISMISS

ii.    **This Court Has Personal Jurisdiction Over Platt, Who Is One Participant In The Alleged Multidistrict Conspiracy.**

"Any civil action or proceeding under this chapter against any person may be instituted in the district court of the United States for any district which such person resides, is found, has an agent, or transacts his [or her] affairs." (18 U.S.C. § 1965(a).) Here, there is an uncontroverted allegation defendant, D. Alexander Platt, resides in the County of San Francisco. (Complaint at para. 2.) Moreover, there are uncontroverted allegations nearly all of the alleged wrongful acts by Platt were done in the County of San Francisco. (Complaint at para. 11, 12, 13 and the entire complaint, generally.) Finally, and most telling is the fact she acknowledged the receipt of service in the County of San Francisco. (See Declaration of Craig A. Bealer, attached as Exhibit B.) As such, this court has personal jurisdiction over Platt, thus meeting the first requirement of comporting with the "ends of justice" requirement.

iii.    **There Is No Other District In Which A Court Will Have Personal Jurisdiction Over All Of The Alleged Conspirators.**

The Costicks' motion to dismiss does not controvert or argue Platt is not subject to this court's personal jurisdiction. As such, under Schwarzenegger, supra, for purposes of this motion, the court must assume as true it has personal jurisdiction over Platt. With this established, it would appear the only other conceivable district that could house all defendants would be District Court in New Mexico. The complaint, however, is wholly devoid of any allegations establishing a District Court in New Mexico could have personal jurisdiction over Platt. [3] Moreover, preliminary investigations do not reveal a District Court in New Mexico could have personal jurisdiction over Platt. Simply put, the uncontroverted allegations show all of Platt's conduct, not to mention the Costicks' conduct, was directed within the State of California. As such, there is no other district that will have personal jurisdiction over all of the alleged conspirators.

Therefore, under Butcher, supra and United States Code, Title 18, section 1965(b), the ends of justice require this court to maintain jurisdiction since there is a nationwide single

---

[3]    It is understood the Costicks are Platt's parents and Platt has visited them in New Mexico in the past. It is highly speculative and should not be considered that Platt could be served in "tag" fashion at some point in the future. To engage in such speculation and conjecture is not permissible as it is equally plausible Platt may never visit New Mexico again.

6

**PLAINTIFF TEG STAFFING INC'S OPPOSITION TO DEFENDANT SAUNDRA COSTICK AND DEFENDANT JOHN COSTICK'S MOTION TO DISMISS**

1  conspiracy, this court has personal jurisdiction over at least one defendant (Platt), and no other

2  district will have personal jurisdiction over all defendants.

3      **B.**    **Personal Jurisdiction Is Proper Over The Costicks Under A Specific**
           **Jurisdiction Analysis.**

4

5      California courts may gain personal jurisdiction over a defendant under specific

6  jurisdiction if the case arises out of certain forum-related acts.   ( Bancroft & Masters, Inc. v.

7  Augusta National, Inc. 223 F.3d 1082, 1086 (9th Cir. 2000).)  Specific jurisdiction "exists if (1)

8  the defendant has performed some act or consummated some transaction within the forum or

9  otherwise purposefully availed himself of the privileges of conducting activities in the forum, (2)

10  the claim arises out of or results from the defendant's forum-related activities, and (3) the exercise

11  of jurisdiction is reasonable." (Id.)

12      **i.**    **The Costicks Purposefully Availed Themselves Of The Privileges Of**
              **This Forum By Aiming Acts Of Fraud At Plaintiff, A Californian**
13              **Corporation.**

14      Purposeful availment in this matter can be found through the "effects test" as established

15  in Calder v. Jones, 465 U.S. 783 (1984).  The purposeful availment element is established if a

16  non-resident act is both aimed at and has effect in the forum state.   ( Bancroft & Masters, Inc.,

17  supra, 223 F.3d at 1087.)  "To meet the effects test, the defendant must have (1) committed an

18  intentional act, which was (2) expressly aimed at the forum state, and (3) caused harm, the brunt

19  of which is suffered and which the defendant knows is likely to be suffered in the forum state."

20  (Id.) The  Bancroft court recognizes there must be "something more" to whittle down this

21  otherwise broad snare to establish specific jurisdiction. (Id.)  The Bancroft court concluded this

22  "something more" was an "express aiming" at the forum state. (Id.)  It went on to define "express

23  aiming" as "wrongful conduct individually targeting a known forum resident." ( Id.)  An act of

24  purposefully defrauding a California plaintiff has been held to satisfy the effects test.

25  (Id.), see, e.g., Metropolitan Life Insurance Co. v. Neaves 912 F.2d 1062 (9th Cir. 1990), in which

26  the court found specific jurisdiction by virtue of a non-resident defendant that sent a letter with

27  the intent to defraud a California resident.)

28

PLAINTIFF TEG STAFFING INC'S OPPOSITION TO DEFENDANT SAUNDRA COSTICK AND
DEFENDANT JOHN COSTICK'S MOTION TO DISMISS

1    Here, uncontroverted allegations establish the Costicks expressly aimed wrongful conduct,

2  by being part of the Conspiracy to defraud plaintiff, a California corporation.  Moreover,

3  uncontroverted allegations establish the Costicks knew they were misappropriating/converting

4  plaintiff's property through the Conspiracy to defraud plaintiff, thus causing plaintiff harm, which

5  the Costicks knew would be suffered in the forum since plaintiff is a California corporation doing

6  business in the State of California.   Therefore, the first prong of a specific jurisdiction analysis

7  is satisfied.

8         ii.    **Plaintiff's Claim Arises Out Of Or Results From The Costicks'**
              **Forum-Related Activities Because "But For" The Costicks**
9              **Involvement In The Conspiracy Plaintiff Would Not Have A Claim**
              **Against The Costicks.**
10

11    The second prong of a specific jurisdiction analysis requires plaintiff to show "but for"

12  causation that the contacts constituting purposeful availment must give rise to the current suit.

13  (Bancroft & Masters, Inc., supra, 223 F.3d at 1088.)  Here, as in Bancroft, it is clear from the

14  uncontroverted allegations "but for" the Costicks involvement in the Conspiracy to defraud

15  plaintiffs (the exact facts that satisfy the purposeful availment prong) plaintiff would not have a

16  claim against the Costicks.

17    Now that plaintiff has established the first two prongs of a specific jurisdiction analysis,

18  the burden rests with defendant to prove jurisdiction is unreasonable.

19         iii.    **Defendants Bear The Burden Of Showing The Exercise Of**
              **Jurisdiction Is Unreasonable, An Argument The Costicks Failed To**
20             **Set Forth.**

21

22    In matters such as this, a defendant must make a "compelling case" in establishing

23  jurisdiction is unreasonable.  (Bancroft & Masters, Inc., supra, 223 F.3d at 1088, citing to Burger

24  King Corp. v. Rudzewicz, 471 U.S. 462, 476 (1985).)  Here, while the Costicks motion cites the

25  three prongs of a specific jurisdiction analysis, including the third prong relating to

26  unreasonableness, it is silent as to this third prong.  As such, not only have the Costicks failed to

27  make a "compelling case" jurisdiction is unreasonable, they have made no argument whatsoever

28  and have therefore waived this argument.

**PLAINTIFF TEG STAFFING INC'S OPPOSITION TO DEFENDANT SAUNDRA COSTICK AND DEFENDANT JOHN COSTICK'S MOTION TO DISMISS**

**V.**

**VENUE ANALYSIS**

Once jurisdiction is established, venue will be deemed proper based on the uncontroverted allegations all or a substantial part of the events or omissions giving rise to the claim occurred in the County of San Francisco.  (18. U.S.C §§1965 (a) and 1965 (b); 28 U.S.C. § 1391 (b)(2).)

In analyzing a reasonableness claim, a court must consider all of the following factors: (1) the extent of defendant's purposeful availment; (2) the actual burden on defendant in defending in the  forum (3) extent of conflict with the sovereignty of the defendant's state (4) the forum's state's interest in adjudicating the claims (5) the most efficient judicial resolution of the controversy  (6) the importance of the forum to plaintiff's interest to convenient and effective relief and (7) the existence of an alternative forum.  (Bancroft, supra, 223 F.3d at 1088.) the Costicks failed to raise any of these factors.

It should be noted these factors weigh in favor of keeping this matter before this court. In short, the uncontoverted allegations show the Costicks purposefully availed themselves of the privileges of this forum, most if not all of the witnesses and evidence are located in this forum (efficiency), this forum has a strong interest in protecting its residents from the intentional wrongful acts of non-residents, and there is no alternative forum.  As such, the Costicks would be unable to show jurisdiction is unreasonable.

///
///
///
///
///
///
///
///
///
///

PLAINTIFF TEG STAFFING INC'S OPPOSITION TO DEFENDANT SAUNDRA COSTICK AND DEFENDANT JOHN COSTICK'S MOTION TO DISMISS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## VI.

## CONCLUSION

Because the Costicks do not controvert nearly the entire complaint, this court must assume the allegations are true. As such, plaintiff alleges sufficient facts to establish personal jurisdiction under either Under United States Code, Title 18, section 1965 or specific jurisdiction. Therefore, plaintiff respectfully contends the Costicks' motion to dismiss for lack of personal jurisdiction and venue should be denied. In the alternative, should this court be inclined to grant the Costicks' motion, plaintiff respectfully requests and reserves its right to amend the complaint.

Dated: August 5, 2008                    DALEY & HEFT, LLP


                                         By:/s/ Craig A. Bealer, Attorney
                                            ROBERT W. BROCKMAN
                                            CRAIG A. BEALER
                                            Attorneys for Plaintiff,
                                            TEG STAFFING, INC.
                                            E-mail: Cbealer@daley-heft.com

PLAINTIFF TEG STAFFING INC'S OPPOSITION TO DEFENDANT SAUNDRA COSTICK AND DEFENDANT JOHN COSTICK'S MOTION TO DISMISS

1  DALEY & HEFT, LLP, ATTORNEYS AT LAW
   ROBERT W. BROCKMAN, JR., ESQ. (BAR #123546)
2  CRAIG A. BEALER, ESQ. (SBN 243059)
   462 STEVENS AVENUE, SUITE 201
3  SOLANA BEACH, CA  92075
   TELEPHONE:  (858) 755-5666
4  FACSIMILE:  (858) 755-7870
   Cbealer@daley-heft.com
5
   Attorneys for Plaintiff
6  TEG STAFFING, INC.

7

8              UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10

11 TEG STAFFING, INC., a California        )  Case No.08-cv-3073 JSW
   Corporation, dba PLATINUM LEGAL         )
12                                         )  **DECLARATION OF CRAIG A. BEALER**
              Plaintiffs,                  )  **IN SUPPORT OF PLAINTIFF TEG**
13                                         )  **STAFFING INC'S OPPOSITION TO**
        v.                                 )  **DEFENDANT SAUNDRA COSTICK**
14                                         )  **AND DEFENDANT JOHN COSTICK'S**
                                           )  **MOTION TO DISMISS**
15 D. ALEXANDER PLATT, an individual,      )
   SANDY COSTICK, an individual, and       )
16 JOHN COSTICK, an individual; and DOES   )  **DATE:**      August 29, 2008
   1-25                                    )  **TIME:**      9:00 a.m.
17                                         )  **DEPT :**     Courtroom 2, 17th Floor
              Defendants.                  )  **JUDGE:**     Hon. Jeffery S. White
18 _____ )

19

20      I, Craig A. Bealer, declare as follows:

21      1.      I am an attorney at law, duly licensed to practice in all the courts of the State of

22 California, and am an associate with the law firm of Daley & Heft, attorneys of record herein for

23 plaintiff TEG STAFFING, INC.

24      2.      I have personal knowledge of all matters stated herein and, if called as a witness,

25 I could competently testify thereto, except as to those matters stated upon information and belief,

26 and as to those matters, I believe them to be true.

27 ///

28

                                           1

1    3.    Defendant Platt accepted service of plaintiff's complaint on or about July 21, 2008

2  through her attorney, Mark Seifert of the San Francisco offices of Allen Matkins, et al.

3    4.    Plaintiff TEG Staffing, Inc. submits the following exhibit in support of its

4  Opposition to Defendant Saundra Costick and Defendant John Costick's Motion to Dismiss:

5    **EXHIBIT A:**  A true and correct copy of Plaintiff's TEG Staffing, Inc.'s Complaint.

6    I declare under penalty of perjury under the laws of the State of California that the

7  foregoing is true and correct and that this declaration was executed on this 5th day of August,

8  2008, at Solana Beach, California.

9    CRAIG A. BEALER, Declarant

10    E-mail: Cbealer@daley-heft.com

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF CRAIG A. BEALER IN SUPPORT OF PLAINTIFF TEG STAFFING INC'S OPPOSITION TO
DEFENDANT SAUNDRA COSTICK AND DEFENDANT JOHN COSTICK'S MOTION TO DISMISS

EXHIBIT A

```
1   DALEY & HEFT, LLP, ATTORNEYS AT LAW
    ROBERT W. BROCKMAN, ESQ. (SBN 156993)
2   CRAIG A. BEALER, ESQ. (SBN 243059)
    462 STEVENS AVENUE, SUITE 201
3   SOLANA BEACH, CA 92075
    TELEPHONE: (858) 755-5666
4   FACSIMILE: (858) 755-7870
    CBEALER@DALEY-HEFT.com
5
    Attorneys for Plaintiff
6   TEG STAFFING, INC.

7

8                 UNITED STATES DISTRICT COURT

9                NORTHERN DISTRICT OF CALIFORNIA

10

11  TEG STAFFING, INC., a California        )  Case No.
    Corporation, dba PLATINUM LEGAL         )
12                                          )
            Plaintiff,                      )
13                                          )  COMPLAINT
        v.                                  )  [JURY TRIAL DEMANDED]
14                                          )
                                            )  DEPT :
15  D. ALEXANDER PLATT, an individual,      )  JUDGE:
    SANDY COSTICK, an individual, and JOHN  )  TRIAL:
16  COSTICK, an individual; and DOES 1-25   )
                                            )
17          Defendants.                     )
                                            )
18                                          )
```

19       PLAINTIFF, TEG STAFFING INC., a California corporation doing business as Platinum

20  Legal states and alleges:

21                                **PARTIES**

22       1.    PLAINTIFF, TEG Staffing, Inc. is and at all times herein mentioned was a

23  corporation under the laws of the state of California with its principal place of business in the City

24  of San Diego, County of San Diego.  PLAINTIFF is and at all times herein mentioned was

25  authorized to do business in the State of California.

26       2.    PLAINTIFF is informed and believes DEFENDANT, D. ALEXANDER PLATT,

27  has never been a licensed attorney in the State of California, although she may be an attorney in

28  other jurisdictions, and is and at all times mentioned herein was an individual residing in the

                                    1

1  County of San Francisco, State of California.

2      3.    PLAINTIFF is informed and believes DEFENDANT, SANDY COSTICK, is and

3  at all times mentioned herein was an individual residing in the State of New Mexico.

4      4.    PLAINTIFF is informed and believes DEFENDANT, JOHN COSTICK, is and at

5  all times mentioned herein was an individual residing in the State of New Mexico.

6      5.    PLAINTIFF is ignorant of the true names and capacities of other DEFENDANT(S)

7  sued herein and DOES 1-25 and therefore, sues those defendants by such fictitious names.

8  PLAINTIFF will amend this complaint to allege the true names and capacities when ascertained.

9      6.    PLAINTIFF is informed and believes and thereon alleges that each of the

10  fictitiously named defendants is responsible, in some manner, for the occurrences herein alleged

11  and the PLAINTIFF's damages as herein alleged were proximately caused by their conduct.

12      7.    At all times relevant to this action, each DEFENDANT, including those fictitiously

13  named, is and was the joint venturer, agent, servant, employer, employee, partner, or surety of the

14  other DEFENDANT(S) and each DEFENDANT was acting within the scope of said venture,

15  agency, employment, partnership, or surety, with the knowledge and consent or ratification of

16  each of the other DEFENDANT(S) in doing the things alleged herein.

17                          **JURISDICTION and VENUE**

18      8.    PLAINTIFF's claims for relief against all DEFENDANTS arise under federal

19  statutory law, namely the Racketeer Influenced and Corrupt Organization Act (RICO). (18 U.S.C.

20  § 1962.)

21      9.    PLAINTIFF's claims for relief against DEFENDANTS SANDY COSTICK and

22  JOHN COSTICK also are proper in federal court as the amount in controversy exceeds $75,000

23  and the lawsuit is between citizens of different states.

24      10.    PLAINTIFF's    pendent    claims    against    DEFENDANTS    for

25  misappropriation/conversion, breach of contract, fraud, misrepresentation, and/or concealment,

26  intentional interference with contractual relations, negligent interference with contractual

27  relations, intentional interference with prospective economic relations, negligent interference with

28  prospective economic relations, unfair business practices, misappropriation of trade secrets, and

COMPLAINT

1　　accounting are related to PLAINTIFF's claim under RICO as these claims form part of the same

2　　case or controversy under Article III of the United States Constitution. Additionally, under United

3　　States Code, Title 28, section 1367(a), this court maintains supplemental jurisdiction over

4　　PLAINTIFF's pendent claims stated above.

5　　　　　11.　　Venue is proper in United States District Court, Northern District of California as

6　　to DEFENDANT PLATT, because PLATT resides or can be found within the boundaries of the

7　　County of San Francisco. (18 U.S.C. § 1965(a).)

8　　　　　12.　　Venue is proper in United States District Court, Northern District of California as

9　　to DEFENDANTS SANDY COSTICK and JOHN COSTICK, as a substantial part of the events

10　　or omissions giving rise to the claim occurred in this District. (28 USC §1391(b)(2).)

11　　　　　　　　　　　　**INTRADISTRICT ASSIGNMENT**

12　　　　　13.　　Assignment is proper in the San Francisco Division based on the fact PLAINTIFF

13　　is informed and believes DEFENDANT PLATT, is and at all times mentioned herein was an

14　　individual residing in the County of San Francisco, State of California and all or a substantial part

15　　of the events or omissions giving rise to the claim occurred in the County of San Francisco, State

16　　of California.

17　　　　　　　　　　　　　　**FACTS**

18　　　　　14.　　PLAINTIFF is a personnel staffing company consisting of various staffing

19　　divisions, including its dba, Platinum Legal, which staff legal professionals within the State of

20　　California.

21　　　　　15.　　PLAINTIFF, through its employees or agents, which included DEFENDANT

22　　PLATT at a time in the past, contracts with various law firms or other organizations (referred to

23　　as "clients or customers") to place attorneys in temporary or full time-direct hire positions per

24　　project demands.

25　　　　　16.　　PLAINTIFF, in turn, pays its staff employees or agents, which included

26　　DEFENDANT PLATT at a time in the past, a salary and commission based on their sales of

27　　staffing services.

28　　　　　17.　　PLAINTIFF's clients or customers are never asked by PLAINTIFF to pay

1   PLAINTIFF'S staff or temporary employees or agents directly.

2       18.    On May 1, 2006, PLAINTIFF and DEFENDANT PLATT entered into an

3   employment agreement entitled, "Alexander Platt Employment Agreement," ("the Contract")

4   which has an express effective date of January 1, 2006.  DEFENDANT PLATT has never been

5   a licensed attorney in the State of California, although she may be an attorney in other

6   jurisdictions.

7       19.    The "Alexander Platt Employment Agreement" incorporates by reference various

8   exhibits, the pertinent of which is Exhibit C, entitled, "Employee Nondisclosure and Assignment

9   Agreement," which was independently executed by DEFENDANT PLATT on May 9, 2006.

10      20.    The "Alexander Platt Employment Agreement" and its various Exhibits, including

11  Exhibit C, will be referred to together as "the Agreement" and are attached to this complaint as

12  "Exhibit A," and incorporated herein as if set forth within this complaint.

13      21.    On February 18, 2008, PLAINTIFF lawfully terminated DEFENDANT PLATT'S

14  employment.

15      22.    To date, PLAINTIFF is informed and believes DEFENDANT PLATT breached

16  and continues to breach "the Agreement" by engaging in the following wrongful and/or illegal

17  conduct:

18      a.    Violating Section 2.2, "Full-time/Best Efforts," and Section 8, "No Conflict of

19  Interest," of "the Contract" while employed by PLAINTIFF in or about 2007 and/or 2008, by not

20  performing in the best interests of PLAINTIFF and competing against PLAINTIFF by devising

21  a scheme or artifice to misappropriate an amount believed to be in excess of $100,000 in funds

22  owed to PLAINTIFF and sent or caused to send the funds interstate by use of the Postal Service

23  or other private or commercial interstate carrier to a personal address in New Mexico care of

24  either DEFENDANT SANDY COSTICK and/or JOHN COSTICK.

25      Specifically, PLAINTIFF is informed and believes DEFENDANT PLATT, while

26  employed, misrepresented and/or concealed material facts in requiring PLAINTIFF's clients or

27  customers to pay DEFENDANTS directly for PLAINTIFF's services and thereby

28  misappropriating PLAINTIFF's rightfully owed payments for its services rendered to its clients

1   or customers.

2       b. Violating Section 12.1 of Exhibit C, "No Solicitation of Customers," after termination,

3   by soliciting PLAINTIFF's current clients or customers for personal gain within one year of being

4   terminated.

5       c.  Violating Section 2 of Exhibit C, "Ownership and Nondisclosure of Proprietary

6   Information," after termination, by using PLAINTIFF's Proprietary Information, as defined within

7   Exhibit C, to solicit PLAINTIFF's current clients or customers for personal gain within one year

8   of being terminated.

9       23.    For DEFENDANTS to effectuate the scheme or artifice to misappropriate

10  PLAINTIFF's rightfully owed funds, PLAINTIFF is informed and believes DEFENDANTS

11  engaged in utilizing the telephone or other means of wire or radio to communicate interstate to set-

12  up and open accounts in various states, which may include California, Arizona, and New Mexico,

13  among others.

14      24.    For DEFENDANTS to effectuate the scheme or artifice to misappropriate

15  PLAINTIFF's rightfully owed funds, PLAINTIFF is informed and believes DEFENDANTS

16  engaged in utilizing the telephone or other means of wire or radio to communicate interstate,

17  regarding the utilization of a mailing address in New Mexico for the receipt of funds

18  misappropriated from PLAINTIFF.

19      25.    PLAINTIFF is informed and believes DEFENDANTS, to effectuate the scheme

20  or artifice to misappropriate PLAINTIFF's rightfully owed funds, engaged the use of the Postal

21  Service or other private or commercial interstate carrier to send or caused to send the funds

22  interstate from California to a personal address in New Mexico and possibly other states.

23                          **FIRST CAUSE OF ACTION**

24  **(Violation of the Racketeer Influenced and Corrupt Organization Act
    [RICO] Against Each DEFENDANT and DOES 1 through 25)**
25

26      26.    PLAINTIFF realleges and incorporates herein paragraphs 1 through 25 as set forth

27  above.

28      27.    PLAINTIFF is informed and believes each DEFENDANT is a "person" within the

1  meaning of United States Code, Title 18, section 1961(3) and an "enterprise" within the meaning

2  of United States Code, Title 18, section 1961(4).

3      28.    PLAINTIFF is informed and believes DEFENDANTS engaged in a pattern of

4  "racketeering activity," within the meaning of United States Code, Title 18, sections 1961(1),

5  1961(5), and 1962(b), to acquire or maintain, directly or indirectly, an interest or control of an

6  enterprise, which is engaged in or the activities of which affect interstate commerce.

7      29.    PLAINTIFF is informed and believes DEFENDANTS were employed by and/or

8  associated with an "enterprise," within the meaning of United States Code, Title 18, sections

9  1961(4) and 1962(c), engaged in, or the activities of which affect, interstate or foreign commerce,

10  to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through

11  a pattern of racketeering activity, within the meaning of United States Code, Title 18, section

12  1961(5).

13      30.    PLAINTIFF is informed and believes DEFENDANTS committed, under United

14  States Code, Title 18, sections 1961(1)(B), 1961(5), 1962(b), and/or 1962(c), the following

15  predicate acts: multiple instances of mail fraud in violation of United States Code, Title 18, section

16  1341 and multiple instances of wire fraud in violation of United States Code, Title 18, section

17  1343.

18      31.    PLAINTIFF is informed and believes DEFENDANTS' pattern of racketeering

19  activity and operation of the enterprise in the commission of the predicate acts actually and

20  proximately caused PLAINTIFF's injuries in an amount to be proven at trial.

21      32.    As such, PLAINTIFF is entitled to threefold the damages sustained, attorneys' fees,

22  and costs under United States Code, Title 18, section 1964.

23      33.    As a result of the DEFENDANTS' conduct, PLAINTIFF is entitled to injunctive

24  relief pursuant to Section 14 of Exhibit C within "the Agreement."

25                           **SECOND CAUSE OF ACTION**

26  **(Misappropriation/Conversion Against Each DEFENDANT and DOES**
    **1 through 25)**

27

28      34.    PLAINTIFF realleges and incorporates herein paragraphs 1 through 33 as set forth

1    above.

2         35.    As illustrated in paragraphs 22 to 25, DEFENDANTS engaged in numerous

3    deceptive, fraudulent, wrongful, and illegal activities, including, but not limited to, creating a

4    scheme or artifice to defraud PLAINTIFF and misappropriate/convert PLAINTIFF's funds and/or

5    money (property) for personal use.

6         36.    As a result of these unlawful and fraudulent activities, DEFENDANTS

7    intentionally and permanently took possession of, or permanently gave away to third parties, a

8    substantial and specific amount of PLAINTIFF's property.

9         37.    At the time of these unlawful conversions, PLAINTIFF owned, possessed, and

10   maintained a right to possess the subject property.

11        38.    PLAINTIFF    did    not    consent    to    DEFENDANTS'    acquisition    and

12   misappropriation/conversion of PLAINTIFF's property.

13        39.    PLAINTIFF has been harmed by DEFENDANTS' unlawful conduct relating to

14   PLAINTIFF's property.

15        40.    DEFENDANTS' unlawful conduct relating to PLAINTIFF's property was a

16   substantial factor, if not the sole factor, in causing PLAINTIFF's harm.

17        41.    As a direct and proximate result of the misappropriation/conversion of

18   PLAINTIFF's property, PLAINTIFF suffered and continues to suffer actual damages in an

19   amount, according to proof at the time of trial.

20        42.    DEFENDANTS' wrongful and illegal conduct was done with malice, oppression,

21   and/or fraud, as illustrated above, in that DEFENDANTS knew said conduct was in violation of

22   "the Agreement" and illegal, and DEFENDANTS intentionally, or recklessly, undertook this

23   action, entitling PLAINTIFF to an award of punitive damages against DEFENDANTS.

24                              **THIRD CAUSE OF ACTION**

25                       **(Breach of Contract Against DEFENDANT Platt)**

26        43.    PLAINTIFF realleges and incorporates herein paragraphs 1 through 42 as set forth

27   above.

28        44.    As stated above, on May 1, 2006, PLAINTIFF and DEFENDANT PLATT entered

                                          7

1    into an employment agreement entitled, "Alexander Platt Employment Agreement", which has an

2    express effective date of January 1, 2006.  The "Alexander Platt Employment Agreement"

3    incorporates by reference  various exhibits, the pertinent of which is Exhibit C, entitled,

4    "Employee Nondisclosure and Assignment Agreement."  Exhibit C was independently executed

5    by DEFENDANT PLATT on May 9, 2006. (See Exhibit A, attached.)

6         45.     PLAINTIFF is informed and believes, as illustrated in paragraphs 22 through 25,

7    above, DEFENDANT PLATT has repeatedly breached said agreement beginning in or about 2007.

8         46.     DEFENDANT PLATT's wrongful conduct was a substantial factor in causing

9    PLAINTIFF's harm.

10        47.     DEFENDANT PLATT's wrongful conduct harmed PLAINTIFF in an amount to

11   be proven at trial.

12        48.     DEFENDANT PLATT's wrongful conduct was done with malice, oppression,

13   and/or fraud, as illustrated in paragraphs 22 through 25, above, in that DEFENDANT PLATT

14   knew said conduct was in violation of "the Agreement" and intentionally, or recklessly, undertook

15   action in violation of "the Agreement" entitling PLAINTIFF to an award of punitive damages

16   against DEFENDANT PLATT.

17        49.     As a result of DEFENDANT PLATT's wrongful conduct, PLAINTIFF is entitled

18   to injunctive relief under Section 14 of Exhibit C within "the Agreement."

19                        **FOURTH CAUSE OF ACTION**

20        **(Fraud, Misrepresentation, and/or Concealment Against DEFENDANT**
     **PLATT)**

21

22        50.     PLAINTIFF realleges and incorporates herein paragraphs 1 through 49 as set forth

23   above.     51.     PLAINTIFF  is  informed  and  believes DEFENDANT PLATT

24   misrepresented and/or concealed material facts, while employed by PLAINTIFF, including, but

25   not limited to DEFENDANT PLATT's scheme or artifice to misappropriate PLAINTIFF's funds

26   by wrongfully or illegally requiring PLAINTIFF's clients or customers to pay DEFENDANTS

27   directly for PLAINTIFF's services.

28        52.     DEFENDANT  PLATT  knowingly  and  intentionally  made  such  material

1    misrepresentations and/or concealed such material facts with the intent to deceive PLAINTIFF and

2    PLAINTIFF's clients or customers for DEFENDANTS' personal gain and/or the gain and benefit

3    of others.

4        53.    Specifically, DEFENDANT PLATT knew PLAINTIFF's clients or customers

5    never were supposed to pay DEFENDANTS directly for PLAINTIFF's services.

6        54.    PLAINTIFF did not know and had no advance knowledge DEFENDANTS would

7    engage in such material misrepresentations and/or would conceal such material facts.

8        55.    PLAINTIFF reasonably relied on the fact DEFENDANT PLATT would not make

9    such misrepresentations or would not conceal such material facts as to defraud PLAINTIFF and

10   PLAINTIFF's clients or customers.

11       56.    DEFENDANT PLATT's wrongful conduct was a substantial factor in causing

12   PLAINTIFF's harm.

13       57.    DEFENDANT PLATT's wrongful conduct harmed PLAINTIFF in an amount to

14   be proven at trial.

15       58.    DEFENDANT PLATT's wrongful conduct was done with malice, oppression,

16   and/or fraud, as illustrated in paragraphs 22 through 25, above, in that DEFENDANT PLATT

17   knew said conduct was in violation of "the Agreement" and intentionally, or recklessly, undertook

18   action in violation of "the Agreement" entitling PLAINTIFF to an award of punitive damages

19   against DEFENDANT PLATT.

20                          **FIFTH CAUSE OF ACTION**

21       **(Intentional Interference With Contractual Relations Against Each
          DEFENDANT and DOES 1 through 25)**

22

23       59.    PLAINTIFF realleges and incorporates by reference paragraphs 1 through 58 as

24   set forth above.

25       60.    PLAINTIFF has contractual relationships with numerous clients or customers.

26   DEFENDANTS knew of these contracts.

27       61.    DEFENDANTS attempted to disrupt the performance of these contracts through

28   the wrongful conduct as illustrated in paragraphs 22 through 25, above.

---

9

1      62.     PLAINTIFF is informed and believes and thereupon alleges DEFENDANTS

2    solicited, induced, or otherwise attempted to secure PLAINTIFF's clients or customers to breach

3    their contractual relationships with PLAINTIFF or otherwise interfered with PLAINTIFF's

4    contractual relationships to the benefit of DEFENDANTS and/or competitors of PLAINTIFF.

5      63.     DEFENDANTS' wrongful conduct was a substantial factor in causing

6    PLAINTIFF's harm.

7      64.     DEFENDANTS' wrongful conduct harmed PLAINTIFF in an amount to be proven

8    at trial.

9      65.     DEFENDANTS' wrongful conduct was done with malice, oppression, and/or fraud,

10   as illustrated in paragraphs 22 through 25, above, in that DEFENDANTS knew said conduct was

11   in violation of "the Agreement" and intentionally, or recklessly, undertook action in violation of

12   "the Agreement" entitling PLAINTIFF to an award of punitive damages against DEFENDANTS.

13      66.     As a result of DEFENDANTS' wrongful conduct, PLAINTIFF is entitled to

14   injunctive relief under Section 14 of Exhibit C within "the Agreement."

15                        **SIXTH CAUSE OF ACTION**

16   **(Negligent Interference With Contractual Relations Against Each DEFENDANT and DOES 1 through 25)**

17

18      67.     PLAINTIFF realleges and incorporates by reference paragraphs 1 through 66 as

19   set forth above.

20      68.     PLAINTIFF has contractual relationships with numerous clients or customers.

21   DEFENDANTS knew of these contracts.

22      69.     DEFENDANTS knew or should have known these contractural relationships would

23   be disrupted if DEFENDANTS failed to act with reasonable care.

24      70.     PLAINTIFF is informed and believes and thereupon alleges DEFENDANTS have

25   solicited, induced, or otherwise attempted to secure PLAINTIFF's clients or customers to breach

26   their contractual relationships with PLAINTIFF or otherwise interfered with PLAINTIFF's

27   contractual relationships to the benefit of DEFENDANTS and/or competitors of PLAINTIFF.

28      71.     DEFENDANTS' wrongful conduct was a substantial factor in causing

1    PLAINTIFF's harm.

2       72.    DEFENDANTS' wrongful conduct harmed PLAINTIFF in an amount to be proven

3    at trial.

4       73.    DEFENDANTS' wrongful conduct was done with malice, oppression, and/or fraud,

5    as illustrated in paragraphs 22 through 25, above, in that DEFENDANTS knew said conduct was

6    in violation of "the Agreement" and intentionally, or recklessly, undertook action in violation of

7    "the Agreement" entitling PLAINTIFF to an award of punitive damages against DEFENDANTS.

8

9       74.    As a result of DEFENDANTS' wrongful conduct, PLAINTIFF is entitled to

10   injunctive relief under Section 14 of Exhibit C within "the Agreement."

11                        **SEVENTH CAUSE OF ACTION**

12   **(Intentional Interference With Prospective Economic Relations Against
     Each DEFENDANT and DOES 1 through 25)**

13

14      75.    PLAINTIFF re-alleges and incorporates herein paragraphs 1 through 74 as set forth

15   above.

16      76.    PLAINTIFF and its clients or customers were in economic relationships that had

17   substantial likelihood of resulting in an economic benefit to PLAINTIFF.

18      77.    DEFENDANTS knew of these economic relationships.

19      78.    DEFENDANTS intended to disrupt these economic relationships.

20      79.    DEFENDANTS disrupted these economic relationships.

21      80.    DEFENDANTS' wrongful conduct was a substantial factor in causing

22   PLAINTIFF's harm.

23      81.    DEFENDANTS' wrongful conduct harmed PLAINTIFF in an amount to be proven

24   at trial.

25      82.    DEFENDANTS' wrongful conduct was done with malice, oppression, and/or fraud,

26   as illustrated in paragraphs 22 through 25, above, in that DEFENDANTS knew said conduct was

27   in violation of "the Agreement" and intentionally, or recklessly, undertook action in violation of

28   "the Agreement" entitling PLAINTIFF to an award of punitive damages against DEFENDANTS.

83.     As a result of DEFENDANTS' wrongful conduct, PLAINTIFF is entitled to injunctive relief under Section 14 of Exhibit C within "the Agreement."

## EIGHTH CAUSE OF ACTION

**(Negligent Interference With Prospective Economic Relations Against Each DEFENDANT and DOES 1 through 25)**

84.     PLAINTIFF re-alleges and incorporates herein paragraphs 1 through 83 as set forth above.

85.     PLAINTIFF and its clients or customers were in economic relationships that had substantial likelihood of resulting in an economic benefit to PLAINTIFF.

86.     DEFENDANTS knew or should have known of these economic relationships.

87.     DEFENDANTS knew or should have known these economic relationships would be disrupted if DEFENDANTS failed to act with reasonable care.

88.     DEFENDANTS disrupted these economic relationships.

89.     DEFENDANTS' wrongful conduct was a substantial factor in causing PLAINTIFF's harm.

90.     DEFENDANTS' wrongful conduct harmed PLAINTIFF in an amount to be proven at trial.

## NINTH CAUSE OF ACTION

**(Unfair Business Practices under Business and Professions Code section 17200 *et seq.* Against Each DEFENDANT and DOES 1 through 25))**

91.     PLAINTIFF re-alleges and incorporates herein paragraphs 1 through 90 as set forth above.

92.     PLAINTIFF is informed and believes DEFENDANTS engaged in unlawful, unfair and deceptive business acts or practices in violation of California Business and Professions Code § 17200 *et seq.,* by, among other things, the following:

a)     directly or indirectly soliciting or enticing PLAINTIFF's clients or customers to do business with a competitor(s) of PLAINTIFF;

b)     directly or indirectly using Plaintiff's proprietary information in violation of "the

1    Agreement;" and

2        c)    using PLAINTIFF's client lists and related client information in violation of "the

3    Agreement" and/or Business and Professions Code § 16607 and related sections.

4        93.    These unlawful, unfair and deceptive business acts or practices deceived and

5    continue to deceive PLAINTIFF, its clients or customers, potential clients or customers, and the

6    public.

7        94.    As a direct and proximate result of DEFENDANTS' unlawful, unfair and deceptive

8    business acts or practices, PLAINTIFF sustained and continues to sustain injury to its business.

9        95.    As a direct result of DEFENDANTS' unlawful, unfair and deceptive business acts

10   or practices, DEFENDANTS received and continue to receive income and profits or other benefits

11   from business rightfully belonging to PLAINTIFF, which PLAINTIFF would have earned absent

12   such unlawful, unfair and deceptive business practices.

13       96.    Under California Business and Professions Code section 17203, PLAINTIFF seeks

14   a temporary restraining order, a preliminary injunction, and a permanent injunction, enjoining

15   DEFENDANTS and anyone else working in concert with DEFENDANTS from: (a) soliciting

16   business from any former or current clients or customers of PLAINTIFF; (b) transferring or

17   publishing any proprietary information belonging to PLAINTIFF; (c) destroying any records or

18   documents relating to the clients or customers and business of PLAINTIFF in DEFENDANTS'

19   possession, custody or control; (d) utilizing, moving or disposing of any property removed from

20   PLAINTIFF's offices as well as any property purchased by DEFENDANTS using funds lawfully

21   belonging to PLAINTIFF; (e) utilizing or disposing of any money or profits generated by

22   DEFENDANTS through their unlawful, unfair and deceptive use of PLAINTIFF's equipment and

23   offices; and (g) utilizing or disposing of any money or profits generated by DEFENDANTS by

24   or through the utilization of PLAINTIFF's proprietary information.

25       97.    Under California Business and Professions Code section 17203, PLAINTIFF

26   further seeks a preliminary injunction and a permanent injunction, mandating DEFENDANTS and

27   anyone else working in concert with DEFENDANTS: (a) disgorge and return to PLAINTIFF any

28   property that DEFENDANTS unlawfully took from PLAINTIFF; (b) return to PLAINTIFF all

---

13

COMPLAINT

1 proprietary, confidential and privileged documents DEFENDANTS or anyone else working in

2 concert with them took from PLAINTIFF, as well as any documents summarizing, quoting from,

3 or otherwise recording information concerning the nature or contents of those documents, and (c)

4 turn over to PLAINTIFF any proprietary, confidential and privileged documents of PLAINTIFF

5 that have come into DEFENDANTS' possession or hereafter comes into DEFENDANTS'

6 possession, unless said documents are received pursuant to a legitimate discovery request or other

7 court order.

8       98.    Under California Business and Professions Code § 17203, PLAINTIFF further

9 seeks an injunction, mandating that DEFENDANTS and anyone else working in concert with them

10 (a) disgorge and return to PLAINTIFF any property that DEFENDANTS or anyone else working

11 in concert with them unlawfully took from PLAINTIFF including any property purchased by

12 DEFENDANTS using funds lawfully belonging to PLAINTIFF; (b) disgorge to PLAINTIFF any

13 money or profits generated by DEFENDANTS by or through the unlawful, unfair and deceptive

14 use of PLAINTIFF's equipment and offices; and (c) disgorge to PLAINTIFF any money or profits

15 generated by DEFENDANTS by or through the use of PLAINTIFF's proprietary information.

16 **TENTH CAUSE OF ACTION**

17 **(MISAPPROPRIATION OF TRADE SECRETS - Civ. Code, § 3426 *et***

18 ***seq.* Against Each DEFENDANT and DOES 1 through 25))**

19       99.    PLAINTIFF realleges and incorporates herein paragraphs 1 through 98 as though

20 set forth above.

21       100.    PLAINTIFF is the rightful owner of certain confidential and proprietary

22 information including, but not limited to, its financial affairs, business and development strategies;

23 PLAINTIFF's clients or customers' names, addresses, telephone numbers, and contact persons,

24 and its or clients or customers' names, addresses, and telephone numbers; PLAINTIFF's policy

25 and procedure; and other proprietary information. Such confidential information and proprietary

26 information shall hereinafter be referred to as PLAINTIFF's "Trade Secrets".

27       101.    The "Trade Secrets" have independent economic value in that, among other things;

28 (a) PLAINTIFF has invested time, effort and money in developing its "Trade Secrets;" and (b) the

14

1   "Trade Secrets" enable PLAINTIFF to provide its clients or customers with services which are

2   more effective, more efficient and financially attractive than its competitors' services.

3         102.    PLAINTIFF has made reasonable efforts to ensure its "Trade Secrets" remained

4   confidential, by not disclosing such information to the public or to its competitors, and by

5   restricting the use of such information by its employees.

6         103.    As an employee or agent of PLAINTIFF, DEFENDANT PLATT was given access

7   to and utilized PLAINTIFF's "Trade Secrets" in DEFENDANT PLATT's participation in the

8   operation of PLAINTIFF's business and performance of PLAINTIFF's contracts with

9   PLAINTIFF's clients.

10        104.    PLAINTIFF is informed and believes that DEFENDANTS have misappropriated

11   PLAINTIFF's "Trade Secrets" to wrongfully attempt to acquire business for themselves or

12   competitors of PLAINTIFF from PLAINTIFF's current and prospective clients or customers.

13        105.    The conduct of DEFENDANTS constitutes a violation of the Uniform Trade

14   Secrets Act under California Civil Code § 3426 *et seq.*

15        106.    As a direct and proximate result of the misappropriation of its "Trade Secrets,"

16   PLAINTIFF has suffered and will continue to suffer actual damages in an amount, according to

17   proof at the time of trial.

18        107.    PLAINTIFF is informed and believes DEFENDANTS have been unjustly enriched

19   by their misappropriation of PLAINTIFF's Trade Secrets. Therefore, PLAINTIFF is entitled to

20   recover for the unjust enrichment caused by this misappropriation that is not otherwise taken into

21   account in computing PLAINTIFF's actual damages pursuant to Civil Code, § 3426.3(a).

22        108.    PLAINTIFF is informed and believes that DEFENDANTS acted willfully,

23   maliciously and with intent to harm PLAINTIFF in that they misappropriated "Trade Secrets" with

24   a deliberate intent to injure PLAINTIFF's business. PLAINTIFF is therefore entitled to recover

25   punitive damages in the sum of twice the amount of any award herein and reasonable attorneys'

26   fees, pursuant to Civil Code § 3426.3 and 3426.4.

27   ///

28   ///

1

<u>**ELEVENTH CAUSE OF ACTION**</u>

2

**(ACCOUNTING Against Each DEFENDANT and DOES 1 through 25)**

3       109.    PLAINTIFF realleges and incorporates herein paragraphs 1 through 108 as though

4   set forth in above.

5       110.    PLAINTIFF is informed and believes DEFENDANTS wrongfully and/or illegally

6   misappropriated PLAINTIFF's funds for personal gain in violation of California and Federal law.

7       111.    PLAINTIFF is informed and believes DEFENDANTS solicited PLAINTIFF's

8   clients or customers for their own personal gain by utilizing PLAINTIFF's confidential and

9   proprietary information in violation of California law.

10      112.    PLAINTIFF does not know the precise amount of lost revenue or the amount that

11  DEFENDANTS have been unjustly enriched as a result of this unlawful conduct because these

12  amounts can only be determined by an accounting of DEFENDANTS' books and records.

13      113.    PLAINTIFF therefore requests an accounting of DEFENDANTS' books and

14  records so that PLAINTIFF can determine the amount of its lost revenue and the amount in which

15  DEFENDANTS have been unjustly enriched as a result of this unlawful conduct.

16      114.    DEFENDANTS' wrongful conduct was a substantial factor in causing

17  PLAINTIFF's harm.

18      115.    As a result of the conduct of DEFENDANTS, PLAINTIFF is entitled to injunctive

19  relief pursuant to Section 14 of Exhibit C within "the Agreement."

20

<u>**PRAYER FOR RELIEF**</u>

21      WHEREFORE, PLAINTIFF prays for judgment to be entered in its favor against

22  DEFENDANTS as follows:

23      A.      General damages in an amount according to proof, with interest at the legal rate.

24      B.      Special damages in an amount according to proof, with interest at the legal rate.

25      C.      Punitive damages in an amount according to proof, with interest at the legal rate.

26      D.      As to the First Cause of Action, for violation of United States Code, Title 18,

27  sections 1962(b) and 1962(c), for:

28              (1)     an amount according to proof, the sum of which is trebled under United

16

1  States Code, Title 18, sections 1964(c).

2        (2)    costs of suit under United States Code, Title 18, sections 1964(c).

3        (3)    reasonable attorneys' fees under United States Code, Title 18, sections

4  1964(c).

5      E.    As to the Third Cause of Action for Breach of Contract and the Ninth Cause of

6  Action under California Business & Professions Code § 17203, for:

7        (1)    a preliminary injunction, and a permanent injunction, enjoining

8  DEFENDANTS and anyone else working in concert with DEFENDANTS from: (a) soliciting

9  business from any former or current client or customer of PLAINTIFF; (b) transferring or

10  publishing any proprietary information belonging to PLAINTIFF; (c) destroying any records or

11  documents relating to the client or customer and business of PLAINTIFF; (d) destroying any

12  records or documents relating to the client or customer and business of PLAINTIFF in

13  DEFENDANTS' possession, custody or control; (e) utilizing, moving or disposing of any money

14  or profits generated by DEFENDANTS through DEFENDANTS' unlawful, unfair and deceptive

15  use of PLAINTIFF's equipment and offices; and (f) utilizing or disposing of any money or profits

16  generated by DEFENDANTS by or through the utilization of PLAINTIFF's proprietary

17  information.

18        (2)    a preliminary injunction and a permanent injunction, mandating that

19  DEFENDANTS and anyone else working in concert with DEFENDANTS (a) disgorge and return

20  to PLAINTIFF any property DEFENDANTS unlawfully took from PLAINTIFF; (b) return to

21  PLAINTIFF all proprietary, confidential and privileged documents that DEFENDANTS or anyone

22  else working in concert with DEFENDANTS took from PLAINTIFF, as well as any documents

23  summarizing, quoting from, or otherwise recording information concerning the nature or contents

24  of those documents, and (c) turn over to PLAINTIFF any proprietary, confidential and privileged

25  documents of PLAINTIFF that have come into DEFENDANTS' possession or hereafter come into

26  DEFENDANTS' possession, unless said documents are received pursuant to a legitimate discovery

27  request or other court order.

28        (3)    an injunction, mandating DEFENDANTS and anyone else working in

COMPLAINT

1    concert with DEFENDANTS (a) disgorge and return to PLAINTIFF any property that

2    DEFENDANTS or anyone else working in concert with DEFENDANTS unlawfully took from

3    PLAINTIFF, including any property purchased by DEFENDANTS using funds lawfully belonging

4    to PLAINTIFF; (b) disgorge to PLAINTIFF any money or profits generated by DEFENDANTS

5    by or through the unlawful, unfair and deceptive use of PLAINTIFF's equipment and offices; and

6    (c) disgorge to PLAINTIFF any money or profits generated by DEFENDANTS by or through the

7    use of PLAINTIFF's proprietary information.

8       F.  As to the Tenth Cause of Action, under California Civil Code, § 3426.2, for:

9         (1)  a temporary restraining order, a preliminary injunction and a permanent

10   injunction, enjoining DEFENDANTS and anyone else working in concert with DEFENDANTS

11   from: (a) misappropriating, utilizing or disclosing to others any of PLAINTIFF's "Trade Secrets;"

12   (b) soliciting business from any former, current or prospective client or customer of PLAINTIFF;

13   (c) transferring or publishing any proprietary information belonging to PLAINTIFF; and (d)

14   destroying any records or documents relating to the "Trade Secrets" of PLAINTIFF in

15   DEFENDANTS' possession.

16        (2)  a preliminary injunction and a permanent injunction that DEFENDANTS

17   and anyone else working in concert with DEFENDANTS: (a) return to PLAINTIFF all

18   proprietary, confidential and privileged documents DEFENDANTS took from PLAINTIFF, as

19   well as any documents summarizing, quoting from, or otherwise recording information concerning

20   the nature or contents of those documents, and (b) turn over to PLAINTIFF any proprietary,

21   confidential and privileged documents that have come into their possession, or hereafter come into

22   their possession, unless said documents are received pursuant to a legitimate discovery request or

23   other court order.

24      G.  As to the Eleventh Cause of Action, for an accounting of DEFENDANTS' books

25   and records so that it can determine the amount of revenue PLAINTIFF lost and the amount in

26   which DEFENDANTS have been unjustly enriched as a result of DEFENDANTS' unlawful

27   conduct.

28      H.  As to Causes of Action Two through Ten, for misappropriation/conversion, breach

1  of contract, fraud, intentional and negligent interference with contractual relations, intentional and

2  negligent interference with prospective business, unfair business practices, misappropriation of

3  trade secrets, and/or other unlawful acts, for constructive trust and/or equitable lien in favor of

4  PLAINTIFF and against DEFENDANTS as follows:

5          (1)   by virtue of DEFENDANTS' wrongful and unlawful acts, they hold the

6  misappropriated/converted funds and/or money, in an amount believed to be in excess of

7  $100,000.00 (the accounting of which will provide the specific amount) as constructive trustees

8  for the benefit of PLAINTIFF, PLAINTIFF prays for and hereby requests: (a) an order declaring

9  DEFENDANTS hold the above described property in trust for PLAINTIFF, (b) an order declaring

10 PLAINTIFF the owner of the above described property, and (c) an order compelling

11 DEFENDANTS to convey the real property to PLAINTIFF.

12     I.     For costs of suit and attorneys' fees;

13     J.     For such other and further relief as the court may deem proper.

14

15 Dated: *6-24-08*           DALEY & HEFT, LLP

16

17                        By:

18                         ROBERT W. BROCKMAN, ESQ.
                         CRAIG A. BEALER

19                         Attorneys for Plaintiff,
                         TEG STAFFING, INC.

20

21

22

23

24

25

26

27

28

19

COMPLAINT

1    **DEMAND FOR JURY TRIAL**

2    PLAINTIFF respectfully demands a jury trial for all issues so triable.

3

4    Dated:  6 - 24 - 08              DALEY & HEFT, LLP

5

6                                     By:

7                                     ROBERT W. BROCKMAN, ESQ.
                                      CRAIG A. BEALER
8                                     Attorneys for Plaintiff,
                                      TEG STAFFING, INC.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Daley & Heft, LLP
462 Stevens Avenue, Suite 201
Solana Beach, CA 92075
(858) 755-5666   Fax (858) 755-7870

# EXHIBIT A

Alexander Platt
EMPLOYMENT AGREEMENT

This Employment Agreement ("Agreement") is made effective as of January 1, 2006 ("Effective Date"), by and between TEG Staffing, Inc. dba Platinum Legal ("Company") and Alexander Platt ("Employee").

The parties agree as follows:

1.    Employment.  Company hereby employs Employee, and Employee hereby accepts such employment, upon the terms and conditions set forth herein.

2.    Duties.

2.1    Position.  Employee is employed as General Counsel and President of the TEG Staffing, Inc. dba "Platinum Legal", and shall have the duties and responsibilities as set forth in Exhibit A attached hereto and incorporated herein by reference and as may be reasonably assigned by Company from time to time.  Employee shall perform faithfully and diligently all duties assigned to Employee.

2.2    Full-time/Best Efforts.  Employee will expend Employee's best efforts on behalf of Company, and will abide by all policies and decisions made by Company, as well as all applicable federal, state and local laws, regulations or ordinances.  Employee will act in the best interest of Company at all times.  Employee shall devote Employee's full business time and efforts to the performance of Employee's assigned duties for Company, unless Employee notifies Company's President in advance of Employee's intent to engage in other paid work and receives the President's express written consent to do so.

2.3    Work Location.  Employee's principal place of work shall be located in the Bay Area of Northern California, or such other location as the parties may agree upon from time to time.

3.    At-Will Employment Relationship.  Employee's employment with Company is at-will and not for any specified period and may be terminated at any time, with or without cause, by either Employee or Company.  No representative of Company, other than Company's Board of Directors, has the authority to alter the at-will employment relationship.  Any change to the at-will employment relationship must be by specific, written agreement signed by Employee and Company's Board of Directors.  Nothing in this Agreement is intended to or should be construed to contradict, modify or alter this at-will relationship.

4.    Compensation.

4.1    Base Salary.  As compensation for Employee's performance of Employee's duties hereunder, Company will pay to Employee an initial Base Salary payable in accordance with the normal payroll practices of Company, less required deductions for state and federal withholding tax, social security and all other employment taxes and payroll deductions.  In the event, Employee's employment under this Agreement is terminated by either party, for any reason, Employee will earn the Base Salary prorated to the date of termination.

4.2     Incentive Compensation.  Employee will be eligible to receive incentive compensation in accordance with the provisions set forth in Exhibit B attached hereto and incorporated herein by reference.

4.3     Performance and Salary Review.  Company will periodically review Employee's performance on no less than an annual basis.  Adjustments to salary or other compensation, if any, will be made by Company in its sole and absolute discretion.

5.     Company Benefits.  Employee will be eligible for Company benefits as set forth below.  Company reserves the right to change or eliminate the fringe benefits on a prospective basis, at any time, effective upon notice to Employee.

5.1     Customary Fringe Benefits.  Employee will be eligible for all customary and usual fringe benefits generally available to regular full-time employees of Company subject to the terms and conditions of Company's benefit plan documents.

Additional Fringe Benefits.  At Company cost, Employee will be provided with an annual membership to the Golden Gateway Tennis and Swim Club or similar Swim Club in the San Francisco Bay Area, up to a maximum amount of $2,500 per year in membership fees.

5.2     Vacation.  Employee will be eligible to take vacation as business needs permit upon the approval of Company's Board of Directors.  Vacation time will not accrue.  Any accrued vacation previously accrued shall be paid out on termination of employment or earlier by written consent of the Board of Directors.

5.3     Sick Leave.  Employee will be eligible to accrue paid sick leave on a pro rata basis at the rate of one-half (1/2) day per month of employment, up to a maximum of twenty (20) days.  Once the maximum accrual is reached, no further sick leave will be earned until some sick leave is used, thereby reducing the total amount of accrued sick leave below the permitted maximum.  Unused sick leave will not be paid out on termination of employment.

6.     Business Expenses.  Employee will be reimbursed for all reasonable, out-of-pocket business expenses incurred in the performance of Employee's duties on behalf of Company.  To obtain reimbursement, expenses must be submitted promptly with appropriate supporting documentation in accordance with Company's policies.

6.1     Taxi Expenses During Active Projects.  Employee will be reimbursed for roundtrip taxi expenses from Employee's home to the Platinum Legal office and/or the office of Client, as well as roundtrip taxi expenses from the Platinum Legal office to Employee's home or to the office of a Client, provided that the Platinum Legal division has a minimum of one active team with a minimum of five attorneys on assignment. The Platinum Legal division will incur all such costs of Employee's taxi transportation.

7.     Termination of Employee's Employment.

7.1     Termination for Cause by Company.  Although Company anticipates a mutually rewarding employment relationship with Employee, Company may terminate Employee's employment immediately at any time for Cause.  For purposes of this Agreement, "Cause" is defined as: (a) acts or omissions constituting gross negligence, recklessness or willful misconduct on the part of Employee with respect to Employee's obligations or otherwise

-2-

relating to the business of Company; (b) Employee's material breach of this Agreement or Company's Employee Nondisclosure and Assignment Agreement; (c) Employee's conviction or entry of a plea of nolo contendere for fraud, misappropriation or embezzlement, or any felony or crime of moral turpitude; and (d)  Employee's willful neglect of duties as determined in the sole and exclusive discretion of Company's Board of Directors or President.  In the event Employee's employment is terminated in accordance with this subsection 7.1, Employee shall be entitled to receive only the Base Salary then in effect, prorated to the date of termination.  All other Company obligations to Employee pursuant to this Agreement will become automatically terminated and completely extinguished.  If Employee is Terminated for Cause by Company, Employee will not be entitled to receive the Severance Payment described in subsection 7.2 below.

      7.2    Termination Without Cause by Company/Severance.  Company may terminate Employee's employment under this Agreement without Cause at any time on thirty (30) days' advance written notice to Employee.  In the event of such termination, Employee will receive the Base Salary then in effect, prorated to the date of termination, and a "Severance Payment" equivalent to two (2) weeks of Employee's Base Salary then in effect on the date of termination for each full year of continuous service (from June 1, 2004), but in no event less than one (1) month or more than (3) months (the "Severance Period"), payable in accordance with Company's regular payroll cycle, provided that Employee:  (a) complies with all surviving provisions of this Agreement as specified in subsection 11.8 below; (b) executes a full general release, releasing all claims, known or unknown, that Employee may have against Company, in a form provided by Company; and (c) agrees to act as a consultant for Company, without further compensation, for the Severance Period following the termination of the employment relationship, if requested to do so by Company.  All other Company obligations to Employee will be automatically terminated and completely extinguished.  Note: Clause should match the clause in the Option 1 and Option 2 additional compensation agreements.

      7.3    Voluntary Resignation by Employee.  Employee may voluntarily resign Employee's position with Company on thirty (30) days' advance written notice.  In the event of Employee's resignation, Employee will be entitled to receive only the Base Salary for the thirty-day notice period.  All other Company obligations to Employee pursuant to this Agreement will become automatically terminated and completely extinguished.  In addition, Employee will not be entitled to receive the Severance Payment described in subsection 7.2 above.  Company reserves the right to relieve Employee of her duties during the thirty-day notice period in which case Employee will continue to receive salary, commissions, and benefits as if Employee were actively working.  In the event of Employee's separation from employment for reasons of Employee's voluntary resignation due to disability, but not incident to the sale of the business, the provisions of Article 7.2 shall apply.

      8.    No Conflict of Interest. During Employee's employment with Company and during any period when acting as a consultant pursuant to section 7.2, Employee must not engage in any work, paid or unpaid, that creates an actual conflict of interest with Company and/or Company's affiliates (collectively "Companies").  Such work shall include, but is not limited to, directly or indirectly competing with Companies in any way, or acting as an officer, director, employee, consultant, stockholder, volunteer, lender, or agent of any business enterprise of the same nature as, or which is in direct competition with, the business in which Companies are now engaged or in which Companies become engaged during Employee's employment with Company, as may be determined by Company in its sole discretion.  If Company believes such a conflict exists, Company may ask Employee to choose to discontinue the other work or resign employment with Company.  If Company believes such a conflict exists

GT:6436570.2, 3 21.05
40158-20098

during any period in which Employee is receiving payments pursuant to this Agreement, Company may ask Employee to choose to discontinue the other work or forego the remaining payments. In addition, Employee agrees not to refer any client or potential client of Company to competitors of Companies, without obtaining Company's prior written consent, during the term of Employee's employment with Company and during any period in which Employee is receiving payments from Company pursuant to this Agreement.

9.     Confidentiality and Proprietary Rights.  Employee agrees to read, sign and abide by Company's Employee Nondisclosure and Assignment Agreement, which is attached as Exhibit C and incorporated herein by reference.

10.    Agreement to Arbitrate.  Employee agrees to read, sign and abide by Company's Mutual Agreement to Arbitrate Claims, which is attached as Exhibit D and incorporated herein by reference.

11.    General Provisions.

11.1    Successors and Assigns.  The rights and obligations of Company under this Agreement shall inure to the benefit of and shall be binding upon the successors and assigns of Company. Employee shall not be entitled to assign any of Employee's rights or obligations under this Agreement.

11.2    Waiver.  Either party's failure to enforce any provision of this Agreement shall not in any way be construed as a waiver of any such provision, or prevent that party thereafter from enforcing each and every other provision of this Agreement.

11.3    Attorneys' Fees.  Each side will bear its own attorneys' fees in any dispute unless a statutory section at issue, if any, authorizes the award of attorneys' fees to the prevailing party.

11.4    Severability.  In the event any provision of this Agreement is found to be unenforceable by an arbitrator or court of competent jurisdiction, such provision shall be deemed modified to the extent necessary to allow enforceability of the provision as so limited, it being intended that the parties shall receive the benefit contemplated herein to the fullest extent permitted by law. If a deemed modification is not satisfactory in the judgment of such arbitrator or court, the unenforceable provision shall be deemed deleted, and the validity and enforceability of the remaining provisions shall not be affected thereby.

11.5    Interpretation; Construction.  The headings set forth in this Agreement are for convenience only and shall not be used in interpreting this Agreement. This Agreement has been drafted by legal counsel representing Company, but Employee has participated in the negotiation of its terms. Furthermore, Employee acknowledges that Employee has had an opportunity to review and revise the Agreement and has had the Agreement reviewed by legal counsel. Therefore, the normal rule of construction to the effect that any ambiguities are to be resolved against the drafting party shall not be employed in the interpretation of this Agreement.

11.6    Governing Law.  This Agreement will be governed by and construed in accordance with the laws of the United States and the State of California. Each party consents to the jurisdiction and venue of the state or federal courts in San Diego, California, if applicable, in any action, suit, or proceeding arising out of or relating to this Agreement.

GT 6436570.2, 3.21.05
40158-20098

11.7  <u>Notices.</u>  Any notice required or permitted by this Agreement shall be in writing and shall be delivered as follows with notice deemed given as indicated:  (a) by personal delivery when delivered personally; (b) by overnight courier upon written verification of receipt; (c) by telecopy or facsimile transmission upon acknowledgment of receipt of electronic transmission; or (d) by certified or registered mail, return receipt requested, upon verification of receipt.  Notice shall be sent to the addresses set forth below, or such other address as either party may specify in writing.

11.8  <u>Survival.</u>  Sections 8 ("No Conflict of Interest"), 9 ("Confidentiality and Proprietary Rights"), 10 ("Agreement to Arbitrate"), 11 ("General Provisions") and 12 ("Entire Agreement") of this Agreement shall survive Employee's employment by Company.

12.  <u>Entire Agreement.</u>  This Agreement, including Exhibits A through D and the accompanying Addendum incorporated herein by reference, constitutes the entire agreement between the parties relating to this subject matter and supersedes all prior or simultaneous representations, discussions, negotiations, and agreements, whether written or oral.  This Agreement may be amended or modified only with the written consent of Employee and the President of Company.  No oral waiver, amendment or modification will be effective under any circumstances whatsoever.

THE PARTIES TO THIS AGREEMENT HAVE READ THE FOREGOING AGREEMENT AND FULLY UNDERSTAND EACH AND EVERY PROVISION CONTAINED HEREIN. WHEREFORE, THE PARTIES HAVE EXECUTED THIS AGREEMENT ON THE DATES SHOWN BELOW.

ALEXANDER PLATT

Dated: 5·1·06

Address: _____
_____

TEG STAFFING, INC.

Dated: 5-1-06

By: _____
Robert Svet, Director
2355 Northside Drive, Suite 160
San Diego, CA  92108

GF6436570.3, 3.21.05
46159-20098

## EXHIBIT A
## POSITION EXPECTATIONS, DUTIES AND RESPONSIBILITIES

This position reports to Robert Svet, Chairman of the Board of Directors of TEG Staffing, Inc. ("Company"). The focus of this position is on sales and revenue generation, building Teams for document review projects and related functions; serving in the capacity of General Counsel for Platinum Legal; providing leadership and strategic direction to Platinum Legal including the Bay Area (emphasizing consulting services and sales development, maintenance and growth, operational excellence and staff development), as well as taking the lead role in sales efforts for division. Additionally, Employee is expected to work synergistically with Exclusively Legal San Diego on the consultative aspects of Southern California joint deals/Teams.

This position has the following key areas of responsibility and expectations:

A. Develop sales and manage operations and other activity of Platinum Legal, developing and managing Teams, and growing revenue for the division.

B. Employee is expected to meet or exceed gross margin and bottom line figures as set forth in the attached Projections.

C. Recruit, train and hire star performers for staff and Teams positions.

D. Serve as General Counsel for the Platinum Legal division; with all duties and responsibilities as attach to such role;

E. In conjunction with TEG Finance and Accounting staff and on an annual basis, develop Projections for the division, to be effective January 1, 2006 and beyond.

F. On an on-going basis, Employee is expected to provide an overall evaluation and assessment of operational systems and recruitment methods in place, and recommendations for improvement.

G. By October 31, 2006, Employee is expected to develop an overall strategy, timetable and suggested tactics for expanding services, both in terms of geographic offerings and with respect to positions to be staffed.

H. On a calendar quarterly basis by no later than the end of each quarter, submit to the Chairman of the Board written estimations of the projected revenues for the division for business in N. California, S. California, and other geographic locations. Such written documentations shall include law firm/client name (unless confidentiality dictates otherwise), contact names (unless confidentiality dictates otherwise), timetable for activities, number of potential contractors to be

utilized, start date of the assignment/project, and anticipated length of the assignment/project)

l.  Participate in client public relations activities as required, and in community public relations activities on behalf of Platinum Legal (2 per month expected).

GT\6436570.2. 3.21.05
40156-20098

EXHIBIT B
INCENTIVE COMPENSATION

## COMMISSION STRUCTURE (NOTE: SUPERCEDES ALL PRIOR COMMISSION AND BONUS STRUCTURES):

A.     Business Development Commissions

Effective the commission month of January 2006, Employee will receive a commission of 10% of the Platinum Legal monthly division gross margin generated that is a direct result of Employee's proactive sales efforts in the Bay Area. If Employee achieves over $1,000,000 in Gross Margin in 2006, Employee will receive a $25,000 bonus. Gross margin includes gross margin on temporary assignments, ITH and liquidation fees billed; and direct-hire fees received, minus any adjustments.

Effective the commission month of January 2006, Employee will also be eligible to receive a commission of 10% of one-half of the gross margin generated on Southern California cooperative business arrangements (i.e., Teams) with Exclusively Legal San Diego. Such gross margin will not be factored in for purposes of bottom line commissions as set forth in Article C of this Exhibit. Specific requirements of cooperative business arrangements with Exclusively Legal are as set forth in the parties' Gross Margin Split Agreement.

The Company reserves the right to modify the above commission structure at any time in its sole discretion in order to accommodate business fluctuations or other needs.

B.     Management Override Commissions on New Business.

Effective the commission month of February 2006, Employee is eligible to receive a monthly override commission of 5% of the gross margin generated by the proactive business development efforts of Employee's direct reports in the Platinum Legal division (i.e., new business that results from the sales/marketing efforts of Attorney Consultants and Attorney Recruiters that directly report to Employee). Such direct reports may include Platinum Legal employees as well as independent contractors being utilized by Employee for development of Platinum Legal business. Gross margin includes billings on temporary assignments, ITH and liquidations; and direct hire fees received. This commission is in *addition to* bottom line commission for the Platinum Legal division, as set forth below.

Override commissions are payable on a calendar monthly basis, on the 27th of the month following the end of the month in which they were earned, and upon submission of a commission approval request worksheet.

C.     Platinum Legal Bottom Line Commissions.

-8-

EXHIBIT C
CONFIDENTIALITY AND PROPRIETARY INFORMATION RIGHTS

OT 6436570.2, 3.21 05
40158-20008

EXHIBIT D
MUTUAL AGREEMENT TO ARBITRATE CLAIMS

GT-64365763.3 21.05
46158-20098

EXHIBIT C

# EMPLOYEE NONDISCLOSURE AND ASSIGNMENT AGREEMENT

This Agreement sets forth in writing certain understandings and procedures in effect as of the date of my initial employment with Eplion, Inc. ("Company").

1.    "Proprietary Information" Definition. "Proprietary Information" includes any information that is confidential or proprietary, technical or non-technical information of Company and/or Company's affiliates (collectively "Companies"), including for example and without limitation: information related to Innovations (as defined in Section 4 below); Companies' contracts; Companies' marketing materials and strategies; Companies' mark-up guidelines; Companies' customer lists (including the names, addresses, telephone numbers and account numbers of Companies' customers, Companies' trade history with each customer, and all other information on Companies' customer lists); Companies' customer prospect lists; Companies' training materials, Companies' procedures, methods, processes, techniques, and expertise; company information sheets, recruiting forms, candidate resumes, referral slips, placement reports, phone records, correspondence, memoranda, company (employer) information cards, applicant lists, applicant forms, information including sales and billings, internal operating numbers of all customers (employers) and applicants, including those customers (employers) and applicants that I develop while in the employment of Company; knowledge of which employers-customers pay fees and in what amount, how frequently such employers-customers pay fees, whom to call and speak to in the various companies (contact names and decision-makers), history and information about turnover in available positions, growth and development of the employer-companies, information regarding the particular needs and desires of any Companies' clients, customers or employees, which may be made known to me by Companies, or by any client or customer of Companies, or learned by me during the period of my employment; Companies' software programs; Companies' financial information; and all concepts, plans, proposals or information about Companies'

current, future and proposed business, and/or any other information and records obtained or developed by Companies in the course of their business operations, whether or not such information would be enforceable as Companies' trade secret. "Proprietary Information" also includes information Companies have received from others that Companies are obligated to treat as confidential or proprietary, which may be made known to me by Companies, a third party or otherwise that I may learn during my employment with Company.

2.    Ownership and Nondisclosure of Proprietary Information. All Proprietary Information is the sole property of Company, Company's affiliates, Company's assigns, Company's customers and Company's suppliers, as applicable. Company, Company's affiliates, Company's assigns, Company's customers and Company's suppliers, as applicable, are the sole and exclusive owners of all patents, copyrights, mask works, trade secrets and other rights in and to the Proprietary Information. I will not disclose any Proprietary Information to anyone outside Companies, and I will use and disclose Proprietary Information to those inside Companies only as may be necessary in the ordinary course of performing my duties as an employee of Company. If I have any questions as to whether information constitutes Proprietary Information, or to whom, if anyone, inside Company, any Proprietary Information may be disclosed, I will consult with my manager at Company.

3.    "Innovations" Definition. In this Agreement, "Innovations" means all discoveries, designs, developments, improvements, inventions (whether or not protectable under patent laws), works of authorship, information fixed in any tangible medium of expression (whether or not protectable under copyright laws), trade secrets, know-how, ideas (whether or not protectable under trade secret laws), mask works, trademarks, service marks, trade names and trade dress.

4.    Disclosure and License of Prior Innovations.  I have listed on Exhibit A ("Prior Innovations") attached hereto all Innovations relating in any way to Companies' business or demonstrably anticipated research and development or business, which were conceived, reduced to practice, created, derived, developed, or made by me prior to my employment with Company (collectively, the "Prior Innovations"). I represent that I have no rights in any such Company-related Innovations other than those Innovations listed in Exhibit A ("Prior Innovations"). If nothing is listed on Exhibit A ("Prior Innovations"), I represent that there are no Prior Innovations at the time of signing this Agreement. I hereby grant to Company and Company's designees a royalty-free, irrevocable, worldwide, fully paid-up license (with rights to sublicense through multiple tiers of sublicensees) to practice all patent, copyright, moral right, mask work, trade secret and other intellectual property rights relating to any Prior Innovations that I incorporate, or permit to be incorporated, in any Innovations that I, solely or jointly with others, conceive, develop or reduce to practice during my employment with Company (the "Company Innovations"). Notwithstanding the foregoing, I will not incorporate, or permit to be incorporated, any Prior Innovations in any Company Innovations without Company's prior written consent.

5.    Disclosure and Assignment of Company Innovations.  I will promptly disclose and describe to Company all Company Innovations. I hereby do and will assign to Company or Company's designee all my right, title, and interest in and to any and all Company Innovations. To the extent any of the rights, title and interest in and to Company Innovations cannot be assigned by me to Company, I hereby grant to Company an exclusive, royalty-free, transferable, irrevocable, worldwide license (with rights to sublicense through multiple tiers of sublicensees) to practice such non-assignable rights, title and interest. To the extent any of the rights, title and interest in and to Company Innovations can neither be assigned nor licensed by me to Company, I hereby irrevocably waive and agree never to assert such non-assignable and non-licensable rights, title and interest against Company or any of Company's

successors in interest.  This Section 6 shall not apply to any Innovations that (a) do not relate, at the time of conception, reduction to practice, creation, derivation, development or making of such Innovation to Company's business or actual or demonstrably anticipated research, development or business; and (b) were developed entirely on my own time; and (c) were developed without use of any of Company's equipment, supplies, facilities or trade secret information; and (d) did not result from any work I performed for Company.

6.    Future Innovations.  I will disclose promptly in writing to Company all Innovations conceived, reduced to practice, created, derived, developed, or made by me during the term of my employment and for three (3) months thereafter, whether or not I believe such Innovations are subject to this Agreement, to permit a determination by Company as to whether or not the Innovations should be considered Company Innovations. Company will receive any such information in confidence.

7.    Notice of Nonassignable Innovations to Employees in California.  This Agreement does not apply to an Innovation that qualifies fully as a nonassignable invention under the provisions of Section 2870 of the California Labor Code. I acknowledge that a condition for an Innovation to qualify fully as a non-assignable invention under the provisions of Section 2870 of the California Labor Code is that the invention must be protected under patent laws. I have reviewed the notification in Exhibit B ("Limited Exclusion Notification") and agree that my signature acknowledges receipt of the notification.

8.    Cooperation in Perfecting Rights to Innovations.  I agree to perform, during and after my employment, all acts that Company deems necessary or desirable to permit and assist Company, at its expense, in obtaining and enforcing the full benefits, enjoyment, rights and title throughout the world in the Innovations as provided to Company under this Agreement. If Company is unable for any reason to secure my signature to any document required to file, prosecute, register or memorialize the assignment of any rights or

GT\6437439.1
40155-26005

2

application or to enforce any right under any Innovations as provided under this Agreement, I hereby irrevocably designate and appoint Company and Company's duly authorized officers and agents as my agents and attorneys-in-fact to act for and on my behalf and instead of me to take all lawfully permitted acts to further the filing, prosecution, registration, memorialization of assignment, issuance, and enforcement of rights under such Innovations, all with the same legal force and effect as if executed by me. The foregoing is deemed a power coupled with an interest and is irrevocable.

9. <u>Return of Materials</u>. At any time upon Company's request, and when my employment with Company is over, I will return all materials (including, without limitation, documents, drawings, papers, diskettes and tapes) containing or disclosing any Proprietary Information (including all copies thereof), as well as any keys, pass cards, identification cards, computers, printers, pagers, personal digital assistants or similar items or devices that the Company has provided to me. I will provide Company with a written certification of my compliance with my obligations under this Section.

10. <u>No Violation of Rights of Third Parties</u>. During my employment with Company, I will not (a) breach any agreement to keep in confidence any confidential or proprietary information, knowledge or data acquired by me prior to my employment with Company or (b) disclose to Company, or use or induce Company to use, any confidential or proprietary information or material belonging to any previous employer or any other third party. I am not currently a party, and will not become a party, to any other agreement that is in conflict, or will prevent me from complying, with this Agreement.

11. <u>Survival</u>. This Agreement (a) shall survive my employment by Company; (b) does not in any way restrict my right to resign or the right of Company to terminate my employment at any time, for any reason or for no reason; (c) inures to the benefit of successors

and assigns of Company; and (d) is binding upon my heirs and legal representatives.

12. <u>No Solicitation</u>. I understand and agree that Companies' employees and customers and any information regarding Companies' employees and customers is confidential and/or constitutes trade secrets and agree that the following subsections are necessary to protect Companies' confidential and trade secret information and business interests.

12.1 <u>No Solicitation of Customers</u>. I agree that during my employment with Company and for one (1) year thereafter, I will not, directly or indirectly, separately or in association with others, interfere with, impair, disrupt or damage Companies' relationship with any of its customers by soliciting or encouraging others to solicit any of them for the purpose of diverting or taking away business from Companies.

12.2 <u>No Solicitation of Employees</u>. During my employment with Company and for one year (1) year thereafter, I will not solicit, encourage, or cause others to solicit or encourage any employees of Companies to terminate their employment with Companies.

13. <u>No Disparagement</u>. During my employment with Company and after the termination thereof, I will not disparage Companies, their products, services, agents or employees.

14. <u>Injunctive Relief</u>. I agree that if I violate this Agreement, Companies will suffer irreparable and continuing damage for which money damages are insufficient, and Companies shall be entitled to injunctive relief and/or a decree for specific performance, and such other relief as may be proper (including money damages if appropriate), to the extent permitted by law.

15. <u>Notices</u>. Any notice required or permitted by this Agreement shall be in writing and shall be delivered as follows, with notice deemed given as indicated: (a) by personal

delivery, when actually delivered; (b) by overnight courier, upon written verification of receipt; (c) by facsimile transmission, upon acknowledgment of receipt of electronic transmission; or (d) by certified or registered mail, return receipt requested, upon verification of receipt. Notices to me shall be sent to any address in Company's records or such other address as I may provide in writing. Notices to Company shall be sent to Company's Human Resources Department or to such other address as Company may specify in writing.

16.    Governing Law; Forum. This Agreement shall be governed by the laws of the United States of America and by the laws of the State of California, as such laws are applied to agreements entered into and to be performed entirely within California between California residents. Company and I each irrevocably consent to the exclusive personal jurisdiction of the federal and state courts located in California, as applicable, for any matter arising out of or relating to this Agreement, except that in actions seeking to enforce any order or any judgment of such federal or state courts located in California, such personal jurisdiction shall be nonexclusive.

17.    Severability. If an arbitrator or court of law holds any provision of this Agreement to be illegal, invalid or unenforceable, (a) that provision shall be deemed amended to provide Company the maximum protection permitted by applicable law and (b) the legality, validity and enforceability of the remaining provisions of this Agreement shall not be affected.

18.    Waiver; Modification. If Company waives any term, provision or breach by me of this Agreement, such waiver shall not be effective unless it is in writing and signed by Company. No waiver shall constitute a waiver of any other or subsequent breach by me. This Agreement may be modified only if both Company and I consent in writing.

20.    Entire Agreement. This Agreement, including any agreement to arbitrate claims or disputes relating to my employment that I may have signed in connection with my employment by Company, represents my entire understanding with Company with respect to the subject matter of this Agreement and supersedes all previous understandings, written or oral.

I certify and acknowledge that I have carefully read all of the provisions of this Agreement and that I understand and will fully and faithfully comply with such provisions.

EPLICA, INC.

By: MARK HANNA

Title: Corporate Counsel

Dated: 5/9/06

EMPLOYEE

ALEXANDER RATT
(Print Employee Name)

Dated: 5/9/06

<u>Exhibit A</u>

PRIOR INNOVATIONS

Check one of the following:

™     NO SUCH PRIOR INNOVATIONS EXIST.

OR

™     YES, SUCH PRIOR INNOVATIONS EXIST AS DESCRIBED BELOW (include basic
description of each Prior Innovation):

<u>The Consulting Services and Process of Managing Teams were developed by Alexander
Platt in January 1996 and are separate from the Staffing Services provided by Eplica or Eastridge
companies.</u>

Exhibit B

LIMITED EXCLUSION NOTIFICATION TO EMPLOYEES IN CALIFORNIA

THIS IS TO NOTIFY you in accordance with Section 2872 of the California Labor Code that the foregoing Agreement between you and Company does not require you to assign or offer to assign to Company any invention that you developed entirely on your own time without using Companies' equipment, supplies, facilities or trade secret information except for those inventions that either:

(1)    Relate at the time of conception or reduction to practice of the invention to Companies' business, or actual or demonstrably anticipated research or development of Companies; or

(2)    Result from any work performed by you for Companies.

To the extent a provision in the foregoing Agreement purports to require you to assign an invention otherwise excluded from the preceding Section, the provision is against the public policy of California and is unenforceable.

This limited exclusion does not apply to any patent or invention covered by a contract between Company and the United States or any of its agencies requiring full title to such patent or invention to be in the United States.

I ACKNOWLEDGE RECEIPT of a copy of this notification.

EPLICA, INC.

By: _____

_____
(Employee Signature)

Title _Corporate Counsel_

_ALEXANDER RATT_
(Printed Name of Employee)

Date: _5/9/06_

Date: _5/9/06_

1  DALEY & HEFT, LLP, ATTORNEYS AT LAW
   ROBERT W. BROCKMAN, JR., ESQ. (BAR #123546)
2  CRAIG A. BEALER, ESQ. (SBN 243059)
   462 STEVENS AVENUE, SUITE 201
3  SOLANA BEACH, CA  92075
   TELEPHONE:  (858) 755-5666
4  FACSIMILE:  (858) 755-7870
   CBEALER@DALEY-HEFT.com
5
   Attorneys for Plaintiff
6  TEG STAFFING, INC.

7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10
   TEG STAFFING, INC., a California      )  Case No.08-cv-3073 JSW
11 Corporation, dba PLATINUM LEGAL       )
                                         )  **CERTIFICATE OF SERVICE**
12             Plaintiffs,               )
                                         )
13      v.                               )
                                         )
14                                       )
   D. ALEXANDER PLATT, an individual,    )
15 SANDY COSTICK, an individual, and JOHN)
   COSTICK, an individual; and DOES 1-25 )
16                                       )
               Defendants.               )
17                                       )
   _____

18

19
        I, Christina Tamayo, certify and declare as follows:
20
        1.      I am over the age of 18 years and not a party to this action.
21
        2.      I caused to be served the following document(s) via electronic mail:
22
   **PLAINTIFF TEG STAFFING INC'S OPPOSITION TO DEFENDANT SAUNDRA**
23
   **COSTICK AND DEFENDANT JOHN COSTICK'S MOTION TO DISMISS**
24
        3.      **Electronic Mail Notice List**
25
        The following are those who are currently on the list to receive e-mail notices for this
26
   case:
27
   ///
28

                                         1

1  Baldwin J. Lee, Esq., ALLEN, MATKINS, LECK, GAMBLE, MALLORY, & NATSIS, LLP:
   blee@allenmatkins.com
2  **Attorney for Defendant, D. Alexander Platt**

3  Mark Delgado, FITZGERALD ABBOTT & BEARDSLEY:
   mdelgado@fablaw.com
4  **Attorney for Defendants, Sandy Costick and John Costick**

5

6       I declare under penalty of perjury that the foregoing is true and correct.  Executed on

7  August 5, 2008, in Solana Beach, California.

8

9                                    _Christina Tamayo_
                                     Christina Tamayo, Declarant

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28